1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| JEMAR THOMPSON, and others,<br><br>               Plaintiffs,<br><br>        v.<br><br>C&H SUGAR COMPANY, INC., and others,<br><br>               Defendants. | Case No. 12-cv-00391 NC<br><br>**ORDER RESOLVING DISCOVERY DISPUTES**<br><br>Re: Dkt. Nos. 87, 94, 96, 98, 102, 107 |

The parties have filed several letter briefs describing their various discovery disputes in this employment discrimination matter. On January 31, 2014, the Court ordered the parties to meet and confer in an attempt to resolve their discovery disagreements, and to then update the Court as to which disputes still required the Court's intervention. Having evaluated the need for discovery against the burden imposed on the producing party, as well as the legal issues involving privilege, the Court rules as follows:

    1. C&H investigation documents (Dkt. Nos. 87, 94):

- The request to compel emails between Arm, Wilhelm, and Engel is DENIED.

Case No. 12-cv-00391 NC
ORDER RESOLVING DISCOVERY
DISPUTES

- The Court does not yet decide Plaintiffs' request to compel the October 2010 memorandum, and drafts thereof, from Wilhelm to Engel. Defendants are ORDERED to submit these documents for in camera review within seven days of this order.

- The Court does not yet decide Plaintiffs' request to compel Wilhelm's investigation notes. Defendants are ORDERED to submit these documents for in camera review within seven days of this order.

2. Payroll and timesheet documents for non-African American packaging department employees (Dkt. No. 96):

- The request to compel production of payroll documents is DENIED.

- The request to compel production of timesheet documents is GRANTED IN PART. Defendants are ordered to produce timesheet documents from 2009 to present, for non-African American packaging employees promoted during that time frame.

3. Modified work status documents for non-African American packaging department employees (Dkt. No. 96): GRANTED IN PART. Defendants are ordered to produce modified work status documents from 2009 to present, for non-African American packaging employees promoted during that time frame.

4. Family and medical leave documents for non-African American packaging department employees (Dkt. No. 96): GRANTED IN PART. Defendants are ordered to produce family and medical leave documents from 2009 to present, for non-African American packaging employees promoted during that time frame.

5. Cowger and Lee performance evaluations (Dkt. No. 96): DENIED.

6. E-discovery search terms (Dkt. Nos. 98, 102): the parties are ORDERED to provide the Court with the information necessary to resolve the dispute, if one remains after further meet and confer, within seven days of this order.

7. 30(b)(6) deposition topics (Dkt. Nos. 102, 107): the parties are ORDERED to

provide the Court with the information necessary to resolve the dispute, if one remains after further meet and confer, within seven days of this order.

8. Cost shifting of payroll data for named Plaintiffs (Dkt. Nos. 102, 107): Defendants are ORDERED to bear the cost of retrieving and reviewing the Plaintiffs' timesheet and payroll data from 2002-2009, and Plaintiffs are ORDERED to bear the reasonable cost of copying the documents.

## RELEVANT BACKGROUND

Plaintiffs are African American employees of C&H Sugar's packaging department. Dkt. No. 1 at ¶¶ 3, 10-11. Plaintiffs allege that they were denied training and promotion opportunities at C&H due to Plaintiffs' race, in violation of Title VII of the Civil Rights Act of 1964. *Id.* at ¶¶ 3, 15, 21.

Plaintiffs specifically allege that C&H employee Cliff Sullivan had discretion to promote and train, and that he denied promotion and training to Plaintiffs based on their African American race. *Id.* at ¶¶ 12, 44, 58, 65. To support this allegation, Plaintiffs seek documents related to a 2010 internal investigation of hotline complaints that employees made against Cliff Sullivan, complaining that he discriminated on the basis of race. Dkt. No. 87, 94.

Defendant C&H answered the complaint and offered several affirmative defenses. Dkt. No. 8. One of its defenses is that Plaintiffs were not eligible for the training and promotion received by non-African American employees. *Id.*

The parties have had several discovery disputes requiring Court intervention. This order addresses discovery disagreements as presented in docket entries 87, 94, 96, 98, 102, 107. All the parties have consented to the jurisdiction of the undersigned Magistrate Judge. Dkt. Nos. 5, 15.

## LEGAL STANDARD

**A.   Proportionality**

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Information is

relevant for discovery purposes if it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, the Court must limit the scope of discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). In other words, the Court seeks to "strike[] the proper balance between permitting relevant discovery and limiting the scope and burdens of the discovery to what is proportional to the case." *Kaiser v. BMW of N. Am., LLC*, No. 12-cv-01311 DMR, 2013 WL 1856578, at *3 (N.D. Cal. May 2, 2013).

**B. Attorney-Client Communication Privilege**

The attorney-client privilege has eight essential elements: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977). Despite the normal requirement that the communication be made by the client, "the privilege normally extends both to the substance of the client's communication as well as the attorney's advice in response thereto." *Id.*

The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The burden is on the party claiming the privilege to establish that the withheld documents are protected by the attorney-client privilege. *See United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002).

**C. Attorney Work Product Doctrine**

Federal Rule of Civil Procedure 26(b)(3), states that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). However,

1   those materials may be discovered if "(i) they are otherwise discoverable under Rule

2   26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its

3   case and cannot, without undue hardship, obtain their substantial equivalent by other

4   means." *Id.*  But even when the Court finds disclosure is warranted due to substantial need,

5   the Court must still "protect against disclosure of the mental impressions, conclusions,

6   opinions, or legal theories of a party's attorney or other representative concerning the

7   litigation." Fed. R. Civ. P. 26(b)(3)(B).  The burden is on the party claiming the privilege

8   to establish that the withheld documents are protected by the attorney work product. *See*

9   *Martin*, 278 F.3d at 999.

10                                  **DISCUSSION**

11  **A.    C&H Investigation Documents**

12         Plaintiffs move to compel production of several documents related to a 2010

13  investigation of employee hotline complaints alleging Cliff Sullivan engaged in race

14  discrimination.  Dkt. Nos. 87, 94.  These documents include emails, memos, and interview

15  notes. *Id.*

16         **i.     Emails**

17         Plaintiffs move to compel the production of four emails exchanged between David

18  Arm, in-house counsel to defendant American Sugar Refining, Inc., David Wilhelm, former

19  C&H human resources manager, and Ken Engel, former ASP VP of human resources.  Dkt.

20  No. 94.  Defendants argue that these emails are attorney-client privileged because they

21  reflect a request for legal advice by the client—Engel and Wilhelm on behalf of ASR and

22  C&H—and the giving of legal advice by their attorney, David Arm. *Id.*  The Court finds

23  this to be a classic attorney-client privileged communication, and the request to compel

24  these emails is therefore denied. *See Upjohn*, 449 U.S. at 390.

25         **ii.    Memos**

26         Plaintiffs next move to compel production of an October 25, 2010, memorandum

27  from Wilhelm to Engel, as well as the earlier drafts of this memo.  Dkt. No. 94.  Defendants

28  argue that the memos are protected both as attorney-client privileged communications, as

1    well as by the attorney work product doctrine.  To support this argument, Defendants

2    submitted a declaration from David Arm, in which he states that he "essentially ghostwrote"

3    the memos, particularly the investigation summary and conclusion sections.  Dkt. No. 95.

4        The Court finds that Defendants have not met their burden of establishing that the

5    memos are protected by the attorney-client privilege.  Defendants cite no support, and the

6    Court has found no support, indicating that an attorney "essentially ghostwriting" a

7    communication—whatever that means—renders that communication protected by the

8    attorney-client privilege.  The purpose of the privilege is to encourage open and frank

9    communication between the client and his attorney, and the Court does not see how

10   protecting veiled and "ghostwritten" communication not clearly written by an attorney

11   would further this purpose.  The Arm declaration is not sufficient to meet Defendants'

12   burden of establishing that Arm, rather than Wilhelm, wrote the memo or that it was written

13   due to a request for legal advice by the client.  *See Hickman*, 329 U.S. at 508 (finding that

14   "the protective cloak of [the attorney-client] privilege does not extend to information which

15   an attorney secures from a witness while acting for his client in anticipation of litigation.

16   Nor does this privilege concern the memoranda, briefs, communications and other writings

17   prepared by counsel for his own use in prosecuting his client's case; and it is equally

18   unrelated to writings which reflect an attorney's mental impressions, conclusions, opinions

19   or legal theories.");  *Walker v. Cnty. of Contra Costa*, 227 F.R.D. 529, 536 (N.D. Cal. 2005)

20   (finding that a report "contain[ed] no attorney-client communications, since it was neither

21   prepared by nor addressed to an attorney, but was prepared by the Human Resources

22   Director for the Board of Supervisors.").

23       The memos do, however, qualify as attorney work product.  Although Defendants

24   have not established that Arm wrote the memos, Arm's declaration makes clear that he

25   "directed and supervised" Wilhelm in his investigation in anticipation of potential litigation

26   stemming from the hotline complaints.  Dkt. No. 95 at 2.  The work product doctrine

27   protects material prepared by "representatives" for the attorney as well as material prepared

28   by the attorney himself.  Fed. R. Civ. P. 26(b)(3)(A).  Therefore, the memos written by

1    Wilhelm qualify as attorney work product.

2          However, Plaintiffs have demonstrated that the requested documents are relevant and

3    that they have a substantial need for the investigation memos. *See* Fed. R. Civ. P.

4    26(b)(3)(A)(i)-(ii).  First, the Court finds that investigation of allegations that Cliff Sullivan

5    committed race discrimination at the workplace is highly likely to be relevant to Plaintiffs'

6    claims, and Plaintiffs' need for the documents is therefore greater. *See Hickman*, 329 U.S.

7    at 511 ("Where relevant and non-privileged facts remain hidden in an attorney's file and

8    where production of those facts is essential to the preparation of one's case, discovery may

9    properly be had.").  Second, Plaintiffs' attempts to acquire the facts underlying the

10   investigation from other sources have been unsuccessful.  Plaintiffs deposed three HR

11   employees who were not knowledgeable about the investigations. Dkt. No. 94 at 5.

12   Plaintiffs also attempted to depose Wilhelm, but Defendants' counsel delayed in scheduling

13   that deposition, and later claimed to be unable to arrange the deposition because Wilhelm

14   left C&H and moved out of state. *Id.* Even if Plaintiffs were able to depose Wilhelm,

15   Plaintiffs reasonably expect that Defendants would object to Wilhelm answering questions

16   regarding the investigation based on their claims of attorney-client and work product

17   privilege.  In light of all this, Plaintiffs have demonstrated a substantial need for the

18   investigation documents and the qualified work product doctrine must give way.

19         But this is not the end of the inquiry, as the Court recognizes that even when a party

20   demonstrates substantial need, our Circuit affords special protection to the mental

21   impressions of attorneys. *Holmgren*, 976 F.2d at 577 ("A party seeking opinion work

22   product must make a showing beyond the substantial need/undue hardship test required

23   under Rule 26(b)(3) for non-opinion work product.").  Because Arm declares that he drafted

24   the investigation questions and "ghost wrote" the legal conclusions in the memo, it may be

25   that the memos reflect the mental impressions of Arm, who directed Wilhelm in the

26   investigation, even if Arm did not himself author the memos.  However, the Court cannot

27   assess this without in camera review of the memos.  Therefore, the Court orders

28   Defendants, within seven days of this order, to submit the memos to the Court for in camera

1  review, so that the Court may determine if redactions are required to protect the mental

2  impressions of David Arm.

3        **iii.**    **Interview Notes**

4       Defendants argue that Wilhelm's notes from interviews for the 2010 investigation are

5  attorney work product because Arm drafted the interview questions and directed the

6  investigation.  As discussed above, the Court finds that Defendants have established that

7  Arm directed the investigation in anticipation of litigation, and therefore finds that the

8  interview notes qualify as attorney work product.  However, the substantial need analysis is

9  the same for the interview notes as discussed regarding the memos.  Like the memos, the

10  Court cannot presently assess whether the interview notes reflect the mental impressions of

11  Arm.  Therefore, the Court orders Defendants, within seven days of this order, to submit the

12  interview notes to the Court for in camera review, so that the Court may determine if

13  redactions are required to protect Arm's mental impressions.

14  **B.**    **Payroll and Timesheet Documents for Non-African American Employees**

15       Plaintiffs next move to compel production of all timesheet and payroll documents for

16  all non-African American employees in the packaging department from 2002 to present.

17  Dkt. No. 96.  Plaintiffs argue that this information is necessary to create an "apples to

18  apples" comparison of African American packaging employees with their counterparts of

19  other races.  *Id.*  This comparison is allegedly relevant because one of Defendants' defenses

20  is that the African American employees were not eligible for training and promotion due to

21  tardiness, leaves of absence, or disciplinary reasons.  *Id*.  Plaintiffs therefore seek to

22  demonstrate that African American employees were in fact eligible, or that their non-

23  African American counterparts were equally ineligible but promoted nonetheless.  *Id.*

24       The request to compel production of payroll documents is denied.  The Court finds

25  this information to be duplicative and cumulative, since Plaintiffs already possess all

26  promotion records for all packaging department employees for the last ten years.  Dkt. No.

27  96 at 4.  Plaintiffs argue that they need payroll documents to show when promotions took

28  place, but they have pointed to no evidence indicating that the promotion records

Case No. 12-cv-00391 NC
ORDER RESOLVING DISCOVERY
DISPUTES
       8

1   themselves are inaccurate.  The burden on Defendants in producing those payroll

2   documents outweighs the low likelihood of discovering relevant evidence.

3        The request to compel production of timesheet documents is granted in part.

4   Plaintiffs have demonstrated that the timesheet information is relevant to Defendants'

5   defense regarding eligibility for promotion.  However, Plaintiffs only possess their

6   timesheet information, with which to compare against non-African American employees,

7   from 2009 to present.  Therefore, the burden to Defendants in producing timesheet

8   documents from before 2009 is outweighed by their low relevance value.  The Court also

9   finds that the information is only relevant as to non-African American employees who

10  actually received promotions.  Therefore, the Court orders Defendants, within fourteen

11  days of this order, to produce timesheet documents from 2009 to present for the non-

12  African American packaging employees who received promotions in that time frame.

13  **C.    Modified Work Status Documents for Non-African American Employees**

14       The same analysis applies for modified work status as the Court applied to timesheet

15  documents.  The modified work status documents are relevant to disproving Defendants'

16  defense of ineligibility, but only as to promoted non-African American employees since

17  2009.  Defendants raise an additional concern regarding this category of documents, due to

18  the privacy rights of the non-African American employees.  Although the Court is mindful

19  of the privacy rights of these third party employees, Plaintiffs have demonstrated a

20  compelling need for the documents in order to disprove Defendants' primary defense

21  theory, and the information cannot be obtained by other reasonable means.  Further, the

22  production of third party employee information is subject to a protective order, and the

23  parties may also seek leave to file under seal when appropriate.

24       Therefore, the Court orders Defendants, within fourteen days of this order, to produce

25  modified work status documents from 2009 to present for the non-African American

26  packaging employees promoted during that time frame.

27  **D.    Family and Medical Leave Documents for Non-African American Employees**

28       The same analysis applies for family and medical leave documents as the Court

1  applied to modified work status documents.  The family leave documents are relevant to

2  disproving Defendants' defense of ineligibility, but only for non-African American

3  employees promoted since 2009.  Therefore, the Court orders Defendants, within fourteen

4  days of this order, to produce family and medical leave documents from 2009 to present for

5  the non-African American packaging employees promoted during that time frame.

6  **E.     Cowger and Lee Performance Evaluations**

7        Plaintiffs' request for performance evaluations for C&H employees Cowger and Lee

8  is denied.  Plaintiffs have not demonstrated how the performance evaluations of these

9  employees are likely to contain relevant information regarding Cliff Sullivan, or any other

10 issue in this case.

11 **F.     E-discovery Search Terms and Custodians**

12        Next, the parties dispute the terms and custodians to be used in searching Defendants'

13 email and electronic documents.  Plaintiffs state that they proposed a list of search terms

14 and custodians to Defendants, but that Defendants refused to accept these terms and never

15 made a counter proposal.  Dkt. No. 107.  Defendants complain that Plaintiffs' "initial

16 proposal of about 200 incredibly broad search terms and innumerable custodians were non-

17 starters" and that Plaintiffs refused to narrow the terms and custodians.  *Id.*  Neither party

18 has provided the Court with the proposed list of terms or custodians, leaving it impossible

19 to decide this issue even if it were necessary for the Court to do so.

20        The Court is not in the business of drafting e-discovery search terms.  These types of

21 decisions about minute discovery details are typically negotiated by the parties, who are

22 better equipped with knowledge of the needs of their case to make these choices.  This

23 Court has emphasized the importance of the parties cooperating to iron out discovery

24 wrinkles on their own:

25        The discovery system depends absolutely on good faith and common sense from
         counsel.  The courts, sorely pressed by demands to try cases promptly and to rule
26       thoughtfully on potentially case dispositive motions, simply do not have the
         resources to police closely the operation of the discovery process.  The whole
27       system of Civil adjudication would be ground to a virtual halt if the courts were
         forced to intervene in even a modest percentage of discovery transactions.  That
28       fact should impose on counsel an acute sense of responsibility about how they

1
2

> handle discovery matters.  They should strive to be cooperative, practical and sensible, and should turn to the courts (or take positions that force others to turn to the courts) only in extraordinary situations that implicate truly significant interests.

3  *Tierno v. Rite Aid Corp.*, 05-cv-02520 TEH, 2008 WL 3876131, at *2 (N.D. Cal. Aug. 19,

4  2008) (quoting *In re Convergent Tech. Sec. Litig.*, 108 F.R.D. 328, 331 (N.D. Cal. 1985)).

5       The Court therefore orders the parties to further meet and confer in an effort to jointly

6  negotiate a list of terms and custodians to be used in searching Defendants' electronic

7  documents.  If Defendants do not agree with the proposal of Plaintiffs, they should propose

8  their own set of terms and custodians, and the parties should work together from there.  The

9  parties are ordered to inform the Court in a joint letter, within seven days of this order,

10  whether they are able to resolve this issue or if they continue to require the Court's

11  intervention.  Should the latter be true, the parties must provide the Court with each party's

12  proposed list of terms and custodians and their justification for their respective lists.

13  **G.     30(b)(6) Deposition Topics**

14       The same analysis applies to the negotiation of 30(b)(6) deposition topics as the Court

15  applied to search terms and custodians.  The Court therefore orders the parties to further

16  meet and confer in an effort to jointly negotiate a list of 30(b)(6) deposition topics.  The

17  parties are ordered to inform the Court in a joint letter, within seven days of this order,

18  whether they are able to resolve this issue or if they continue to require the Court's

19  intervention.  Should the latter be true, the parties must provide the Court with each party's

20  proposed list of 30(b)(6) topics and their justification for their respective lists.

21  **H.     Cost Shifting of Payroll Data for Named Plaintiffs**

22        Finally, the parties disagree as to who should bear the cost of collecting and

23  reviewing Plaintiffs' timesheet and payroll documents from 2002 to 2009, which

24  Defendants state are only available in paper format and are housed in a storage facility.

25  Under the Federal Rules of Civil Procedure, the presumption is that the responding party

26  must bear the expense of complying with discovery requests.  *Peskoff v. Faber*, 251 F.R.D.

27  59, 61 (D.D.C. 2008) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358

28  (1978)).  However for paper documents, a reasonable cost allocation is that "the producing

party bears the costs of reviewing and gathering documents while the requesting party pays for the costs of the copies only." *Tierno*, 2008 WL 3287035, at *1 (quoting *Bills v. Kennecott Corp.* 108 F.R.D. 459, 462 (D. Utah 1985)).

Defendants have not provided a cost estimate for the disputed production, nor have they demonstrated why the Court should stray from the normal method of divvying the costs of paper document production.  Should the Court's ruling on the pending motion for summary judgment impact the relevance value of these documents, the Defendants may move the Court for relief from bearing the cost of the production.  For now, the Court orders that Defendants will pay for the cost of retrieving and reviewing the documents, and Plaintiffs will bear the reasonable cost of copying the documents.

## CONCLUSION

This order fully resolves the disputes presented in docket entry 96.  The disputes regarding investigation documents, presented in docket entries 87 and 94, remain open pending in camera review.  The disputes regarding e-discovery search terms and 30(b)(6) topics, presented in docket entries 98, 102, and 107, remain open pending further meet and confer of the parties and additional information to be presented to the Court within the next seven days.

IT IS SO ORDERED.

Date:  February 14, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge

Case No. 12-cv-00391 NC
ORDER RESOLVING DISCOVERY
DISPUTES
12